| xBYRNES, Judge.
JUDGMENT OF MAY 31, 1988-CHILD CUSTODY
The procedural history and law of this case is as set forth in Parker v. Parker, 559 So.2d 37 (La.App. 4 Cir.1990). In that case this court vacated a judgment awarding custody of Lana[1] and Dana Parker to their mother, the appellee, Diana M. Parker. We found that this represented a change of custody from their father the appellant, Mr. Parker. We remanded the case to the trial court with instructions that it be reconsidered in light of the criteria set forth in Bergeron v. Bergeron, 492 So.2d 1193 (La.1986). We did so pursuant to a finding that “[i]t is clear from the trial judge’s written reasons, the Bordelon [v. Bordelon, 390 So.2d 1325 (La.1980) ] “best interest” criteria was the sole basis of his decision.” Parker, supra, at 39. This Court found in Parker that the trial court failed to take into account the heavy burden of proof rule and the change of circumstances rule set forth in Bergeron.
hOn remand, the trial court rendered judgment on February 9, 1994 depriving the father of the sole custody which had been recognized by this court in Parker, and awarded joint custody to both parents. The mother, Dr. Parker, was named the domiciliary parent. In making this change of custo *35 dy, the trial court placed great weight on the fact that Dr. Parker had de facto or physical custody for an extended time period; the trial court questioned the applicability of Bergeron; and the trial court misinterpreted Bergeron. Once again the trial court failed to apply properly the Bergeron standards. We reverse.
. This court must now conduct a de novo review of the record. This case was not remanded to the trial court for a determination of whether the Bergeron standards applied. This Court had already made the decision that they must be applied. Parker, supra. Therefore, it was error for the trial court to question the applicability of those standards.
“Present custody” as that term is used in Bergeron, 492 So.2d at 1200 means legal custody. Therefore, it was error for the trial court to interpret that term as meaning de facto[2] or physical custody. To the contrary, the Bergeron court clearly expressed its disapproval of allowing de facto custody to be used as a device to defeat legal custody as Mrs. Parker has attempted to do for years in this case:
13“... [E]ven if Bergeron has had physical custody of the child for two years since the second improper retention in August, 1984, this is not in and of itself a change in circumstances sufficiently extraordinary to justify upsetting the original custody decree. If it were, a parent having lost a custody dispute might believe that by abducting or improperly retaining a child and waiting for time to pass, the prior decree could be effectively nullified. ...
Although not alleged by Bergeron in his petition, the trial court alluded to the child’s expression of his preference to have his custody transferred to his father. A child’s preference, in and of itself, with no explanatory evidence, as in the present case, is nót a material change of eircum-stances affecting the child’s welfare. Pierce v. Pierce, 213 La. 475, 35 So.2d 22 (1948); Cenac v. Power, 211 So.2d 408 (La.App. 1st Cir.1968). Denigrated in rank, to some degree, should also be the natural or manipulated “satisfaction” of abducted or improperly retained children with the homes where they presently reside.”
Bergeron, supra, at 1203.
We have reviewed the record and find that Dr. Parker failed to meet the standards imposed by Bergeron which must be met before our courts will order a change of custody.
JUDGMENT OF DECEMBER 15, 1987 — CHILD SUPPORT
In Parker v. Parker, 559 So.2d at 38 this Court also vacated and remanded the judgment of December 15, 1987 for a review of the trial transcript and a de novo finding of disputed facts, because the judgment had been rendered without reviewing the transcript of the hearing held by a commissioner to determine child support arrearages.
On remand, the trial court reviewed the transcript of the hearing before the commissioner, and rendered a judgment on May 26, 1994 calculating the child support arrearages. Mr. Parker appeals that judgment. We reverse.
|4We find that both the report of the commissioner and the judgment of May 26, 1994 contain clear errors, necessitating a de novo review by this Court. Both state that pursuant to the Missouri judgment of December 23, 1980, Mr. Parker was entitled to $35.00 per week child support. However, the Missouri judgment awards Mr. Parker $35.00 per week for each of two children, i.e., $70.00 per week. In addition to errors of calculation in the judgment appealed from, we also find errors in previous judgments relied upon by the judgment appealed from. Such errors of calculation can be corrected at *36 any time. LSA-C.C.P. art. 1951. See also Official Revision Comment (d) thereunder.
At the very outset of the hearing before the commissioner, Dr. Parker acknowledged that she was required to pay $35.00 per week for each child, subject to a 50% reduction for each of the weeks she had physical custody of the child. This order was in effect from December 28, 1980 until January 1, 1984, for a total of 158 weeks. It appears from the record that Dr. Parker had physical custody of the children for 77 out of those 158 weeks. Therefore, Dr. Parker would owe Mr. Parker $70.00 per week for 81 weeks ($5670.00), plus $35.00 per week for 77 weeks ($2695.00), resulting in a total due Mr. Parker of $8295.00 under the Missouri judgment.
By judgment dated February 6, 1984 Dr. Parker was ordered to pay $100.00 per month child support retroactive to January 1, 1984 through June of 1984 for a total of $600.00. The commissioner’s report calculates the amount to be $500.00 and finds that $100.00 is due Dr. Parker from Mr. |5Parker for the month of June 1984, perhaps because she had physical custody of the children that month. The commissioner’s calculation was clearly erroneous because the child support awarded to Mr. Parker in the judgment of February 6, 1984 was unconditional. It does not state that it was predicated on physical custody or any other contingencies. Dr. Parker was entitled to no child support under that judgment.
By judgment of July 19, 1987[3] the parent not having physical custody of the child was ordered to pay $250.00 per month child support effective July 1, 1984.[4] This rate was in effect until June 4, 1987 which is the date of the hearing before the commissioner that marks the cut-off date for the time period under consideration in this appeal. The $250.00 per month payments were due on the first of the month. The period from July 1, 1984 through June 4, 1987 would include 36 such payments of $250.00. Dr. Parker had physical custody during July and August of 1984; June, July, and August of 1985; and June, July, and August of 1986. Therefore, for the period from July 1, 1984 through June 4, 1987, Mr. Parker would be owed $7000.00 and Dr. Parker would be owed $2,000.00.
| sMrs. Parker is entitled to an offset of $3,175.00 based on the Missouri judgment, and a credit for $2383.05 that Mr. Parker collected from her via garnishment.
Based on the transcript of the hearing before the commissioner we find that Dr. Parker is entitled to credit for $425.00[5] which she paid for the period from December 1980 through February 1982; $550.00 for the period from June of 1983 to May of 1984;[6] and $500.00 for the period from September 1984 through May 1985.[7]
Based on the above, this Court finds that for the period from December 23, 1980 through June 4, 1987, Mr. Parker is due $15,965.00 in child support payments. For the same period Dr. Parker is entitled to offsets and credits of $9033.05, resulting in a balance due Mr. Parker of $6931.95.
For the foregoing reasons the judgment of the trial court is reversed and judgment is rendered in favor of Mr. Parker recognizing his custody of his daughter Dana Diane Parker, subject to the reasonable visitation rights of Dr. Parker; and awarding Mr. Parker child support arrearages in the sum of *37 $6931.95, together with interest from the date due.

REVERSED AND RENDERED.

. Because of the protracted history of this litigation, in the years that have passed since this Court's decision to vacate and remand, Lana has become a major. Therefore, the only custody issue before this Court is the custody of Dana.

. Spohrer v. Spohrer, 428 So.2d 1350 (La.App. 4 Cir.1983) and Coltharp v. Coltharp, 368 So.2d 793 (La.App. 2 Cir.1979), writ denied 370 So.2d 578 (La.1979) which are cited by Dr. Parker in support of her de facto custody are not persuasive as they both ante date Bergeron. Moreover, we note that in Spohrer the court was dealing with the initial custody award at the time the suit for separation was filed. Spohrer did not involve an attempt to change a previously rendered custody decree. The facts in Coltharp are likewise inapplicable because in Coltharp the party with de facto custody also had legal custody.

. This judgment was amended twice, but the amendments do not affect these calculations.

. In employing the term "custody” the judgment of July 19, 1984 does not specify whether physical or legal custody is intended. However, as the trial court has consistently interpreted the term "custody” as used in that judgment to mean physical custody, this Court will respect that interpretation. This interpretation is logical because physical custody would normally change more frequently than legal custody.

. This is consistent with the credit for the same amount allowed to Dr. Parker in the written reasons for judgment signed by the trial court on July 19, 1984.

. Dr. Parker stated that she made another payment of $300.00 during this period, but claimed to have lost her documentation.

. Dr. Parker stated that she made another payment of $250.00 during this period, but claimed to have lost her documentation.